## AMERICAN POLICYHOLDERS' INS. CO. v. MAGENHEIM.
### Civil Action No. 2866.

District Court, D. New Jersey.

Sept. 16, 1944.

Edward R. McGlynn, of Newark, N. J., for plaintiff.

Edward Schwartz and Jacob Lubetkin, both of Newark, N. J., for defendant.

MEANEY, District Judge.

This is a proceeding instituted under the Federal Declaratory Judgment Act, 28 U.S. C.A. § 400. The plaintiff seeks a determination as to whether, under a policy of insurance issued by it to the defendant, it is liable, in connection with certain suits now pending in the Essex County Circuit Court, for the defense of such suits or for payment of such judgments as may result therefrom.

### Findings of Fact.

The defendant, Morris Magenheim, is and was during the period of time herein material, the owner of a building located at No. 142 Ferry Street in the City of Newark, New Jersey. In January of 1942, the building, then a three-story structure, was severely damaged by fire, and the defendant determined, as a result, to remove the upper two stories and thus convert the edifice into a one-story building. To that end he engaged the services of one, Max Drill, a building contractor, in a written contract dated July 16, 1942. The actual, physical reconstruction began on or about August 10, 1942. Meanwhile, on August 1, 1942, after the aforementioned contract had been signed but before work thereunder had actually begun, the defendant obtained from the plaintiff a policy of insurance covering the premises, the application for which contained, among other warranties, the following:

"Neither the premises nor the elevators are in the process of construction or undergoing repairs."

The application was attached to, and made a part of, the policy of insurance. That policy contained the following exclusionary clause: Condition A. Paragraph 5:

"This policy does not insure as respects claims for injuries or death growing out of or due to the making of structural alterations in, or extraordinary repairs of the said premises unless a written permit is granted by the Company specifically describing the work and an additional premium is paid therefor."

It is admitted by the defendant that no such application was ever made, and that no such additional premiums were ever paid.

On September 16, 1942, a cornice fell from the front of the building, injuring certain pedestrians who have commenced suit in the Essex County Circuit Court, as aforesaid, against the defendant Magenheim and the building contractor, Drill.

A hearing was had before this Court on February 10, 1944, at which various witnesses gave testimony. A careful examination and weighing of this testimony has convinced the Court that the cornice in question fell as a result of the extraordinary repairs which the building was then undergoing.

Prior to the accident three separate inspections had been made of the cornice. One of these was by Benjamin Mitchell, an Inspector of the Building Department of The City of Newark. Another was made by the building contractor's foreman. There is no evidence that either of these men found the cornice to be structurally unsound; on the contrary, from the testimony of both Mitchell and Drill there arises a strong inference that it was sound. The third inspection was made by the Retail Credit Company for the insurance carrier. The report of this inspection, introduced in evidence by the defendant, showed the cornice to be in excellent condition. Thus is negatived any idea that the fire had weakened the cornice, causing it to fall. It should be remembered, moreover, that the accident occurred fully eight months after the fire.

On the other hand, the modus operandi of the contractor in demolishing the upper two stories of the structure is enlightening. In his own words he "started to take down the structure in the rear and work toward the front." At the time of the accident the third story had been removed in the rear of the building, but was still in place at the front. The roof had been removed from the rear to a point approximately 12 feet from the front. It was from the front of the building that the cornice fell, injuring the pedestrians below.

Obviously, it would be advantageous to the contractor, Drill, if he could establish that the accident did not result from his work on the building. Yet, when he was asked on direct examination by counsel for defendant whether he would say that the cornice fell as a result of the work that he was doing, he could only say "I don't know."

The only logical conclusion from all the evidence is that the cornice had been weakened as a result of the structural changes being wrought by the building contractor, and that the accident grew out of and was due to these changes.

### Conclusions of Law.

■ While it is true that a policy of insurance must be strictly construed against the insurer, that does not mean that language in the contract of insurance must be given any other than the evidently intended significance of the words of the contract, as ordinarily understood.

■ The explicit exclusion of coverage of claims for injuries or death, as set forth in the specific Condition A. of the policy, cited supra, would seem to be applicable to the instant situation. The purport of the paragraph is clear. Since from the evidence adduced, it would seem that the claims for injuries grew out of or were due to structural alterations in the premises for which no written permit was granted by the company and for the allowance of which no additional premium was paid, no liability attached to the insurer.

■ The defendant contends that the insurer is estopped to deny liability under the policy because it did not disclaim until almost three months after notification of the accident was received. The theory is that the defendant was injured by this delay. The thesis is untenable. The insurer had done nothing to indicate that it was assuming liability. The cases of estoppel cited by defendant are, by his own admission, cases where the insurer had indicated an assumption of liability by appearing in the litigation. This was not the case here, and there is nothing in the record that convinces the Court that the defendant was injured by the delay in the plaintiff's denial of liability.

The plaintiff may present a proper decree in accordance with these findings of fact and conclusions of law.